May it please the Court, I'm Attorney Andrew Knapp from Cifuentes, Knapp & Associates and I'm here representing Petitioner Marcos Ordaz-Gonzalez who's sitting in the front row with his beautiful family to play on your sympathies. Your Honors, at first blush it might appear that the main issue in this case was resolved by the Board's intervening decision in matter of Camarillo except that this case is not on all fours with matter of Camarillo. In matter of Camarillo, the removal proceedings were initiated by the one and only notice to appear which the Board held had terminated the continuous physical presence. Whereas in this case, the removal proceedings were initiated by a second notice to appear. That's your Cisneros point, is that right? Yes, Your Honor. Go ahead. Okay. As such, Petitioner's case is much more akin to matter of Cisneros-Gonzalez in which the Board held in bonk that the 10 years continuous physical presence is cut off only by a notice to appear that is the basis for the current. What do we do? Are we able to analyze Cisneros here? He only raised that for the first time here, correct? No, no, Your Honor. Although Petitioner timely raised his Cisneros argument in his motion to reconsider, the BIA never ruled on that issue and this is important, nor explained his refusal to do so. Thus, remand is appropriate for the Board to finally address this argument in the first instance. So the first time your client names the case Cisneros is in the motion to reopen for the BIA. In the motion to reconsider, Your Honor. Had he made something that could be considered a claim that we should then say, but this is an argument under the claim such that it's not too late when he raises it on motion to reopen? As you heard in the prior case, it's claims that are waived are not exhausted. And the claim is that the notice to appear did not operate as a stop time. Right, that the notice to appear in and of itself did not terminate continuous physical presence. And even if the Board would have been within its rights to say, we are not going to address the tension between matter of Cisneros and our decision in your case, because you failed to raise it to us in your direct appeal, then maybe the government would have a point. But here, the Board ignored the argument completely. And as this Court has repeatedly stated, it goes without saying that the BIA is not free to ignore the argument. Was Cisneros on the books at the time of the initial appeal to the BIA? Yes, Cisneros was on the books. Did the government file a brief in response to your appeal to the BIA? To my motion to reconsider, no. No, no. Did it file a responsive brief to the appeal? I could not find one in the AR. No. In Los Angeles, the government normally doesn't do that unless they think that there's a chance of a motion. Now, you did make the – now, I can't remember whether you were representing your client at that time. No, I think I threw it over after we lost the report. No. You, I say now, you generically. You did make the argument in the initial appeal to the BIA that the stop time, that the NTA did not operate at a stop time because the date and time were not named. Now, you didn't name the case. Right. But you very specifically made the argument. The claim was made, Your Honor. Now, the BIA says you didn't make the argument. That's wrong. Well, the BIA, in denying the motion to reconsider, took issue with the fact that this Court's footnote 3 in Garcia-Ramos hadn't been cited to it. But I agree with Your Honor that the claim was raised in the appeal. And even if it hadn't been under the Board's own case law, a matter of OSG, if a precedent decision has been overlooked, that's an appropriate thing to bring in a motion to reconsider so long as it's relevant. To what was argued in the direct appeal. I don't know what the rule is or ought to be in immigration hearings and appeals from an IJ decision to the BIA. But the general ethical rule is that an attorney is required to cite binding authority to the contrary of his own client's position, even when that authority is not cited by the other side. So I want the government to listen to this question. And I think it's important that the government violate its ethical duty by not filing a brief pointing out that Cisneros meant you lose. And, Your Honors, if I may, another problem with resolving this case on the basis of matter of Camarillo is that doing so would create a circuit split with the Second Circuit's recent precedent decision in Guaman-Rigra. In that, that's the first case where they actually explicitly held that. If we follow Camarillo, what result must follow in this case? No result. Camarillo dealt with a one and only notice to appear being served before the 10 years, being filed with the Immigration Court, and the Immigration Court subsequently serving a notice of hearing on the basis of that same NTA. It's a single proceeding. But what's interesting about this case is my client's decision was decided by the board at Chevron step one. The board found the language unambiguous, that it's irrelevant whether the NTA was legally sufficient, time was cut off upon service of the NTA. But in matter of Camarillo, the board backtracked and then published a decision stating, no, in fact, it's ambiguous, that it could be read both ways. It could be read that the service of the notice of appear, regardless of deficiency, cuts off time, or that time is cut off when the notice to appear, when all of the requirements of that notice of appear are fully complied with. And so the board decided to make a policy decision to rule the way it did in matter of Camarillo, but there's no reason to think that they would now rule the same way in my case, because my case is not on all fours. My case has to do with two separate notices to appear, one which was never filed with the Immigration Court. And in addition to the Cisneros case, there's been unpublished board decisions, which I've submitted to this Court via Rule 20HA letter, where the board has specifically said that the purpose of the stop-time rule was to prevent noncitizens from buying time by delaying their proceedings, which is not something they can do if a prior proceeding is terminated. Roberts. Aren't you saying – I think what you're saying is just what you said before, that is, Camarillo is saying that any NTA, regardless of whether it has a time and date in it or not, and regardless of whether it's the same proceeding or not, stops the continuous presence rule. They didn't reach the same proceeding issue. Well, they didn't talk at all about that. That's – isn't that what you're saying, that is, they failed to take into account Cisneros? That's your main point, it seems to me. Which they could do now, because they've determined that the statutes at issue are ambiguous. So they have the Chevron authority to make wise policy choices. And as the Supreme Court said in Judulon, they have to also consider the purposes of immigration laws or the appropriate operation of the immigration system, and they can't have a decision that rests on the happenstance of an immigration official's charging decision. So in this case, it's completely out of my client's control whether or not immigration authorities will pursue his removal proceedings. He's done nothing to delay the inevitable. He hasn't attempted to file meritless appeals or motions to accrue the 10 years. What do you do with the recent Ninth Circuit decision of Olivas Mata v. Holder? What's your position on that? That just came down a couple of weeks ago. I cited that in the 28J letter for the purposes that it wouldn't be appropriate to decide this case on the basis of matter of Camarillo, where this case was decided by the Board in an unpublished decision under Step 1 of Chevron, and Camarillo was decided under Step 2. So that's why I cited that in my 28J letter. And, Your Honors, I only have a minute and a half, if I could reserve that. Let me ask you, what do you think the impact is of Garcia-Ramirez v. Gonzales is on this case? Well, that was in a footnote. I believe that the rule announced there that time stops only when the notice to appear and the notice of hearing are both served. But even if that was not necessary to the Garcia decision? In other words, dicta? Yes, which I don't agree that it was. But even if it was, that rule has been applied. Your Honor recently sat on the panel in Soustegui, Nava, in which you pointed out that the footnote 3 in Garcia is not inconsistent with POPA. In fact, you found that the Board had erred in saying that the NTA had cut off the 10 years, when, in fact, under Garcia, it was only when the notice of hearing was subsequently served. I'm getting old. What case was that, where I said something? Well, it may not have been you, sir, because it was an unpublished memoranda disposition, but you were on the panel. It was the generic you. Yeah, yeah. And what's the name of the case for the Member's District? Soustegui, Nava, Beholder, 382, Fed, Appendix 654, 2010. And it's in one of my Rule 28A letters. And, Your Honor, I only have 15 seconds, if I could. Don't worry. We'll make sure you get a chance to respond. I have a question for you. I think I've got it right, that you're not only filing a petition for review for the denial of the motion to reopen, but a petition for review of the original BIA decision. They're both in front of us. Would it make a difference in terms of what the BIA might do if we were to either grant the petition for review with respect to the motion to reopen, or petition review with respect to the directly coming out from the original BIA decision? Well, I think either way. You could remand the case in chief on the basis of intervening precedent by the board, matter of Camarillo, which I think actually helps my position. Or you could just ask the board to do what it must, which is rule on an argument properly raised in the motion to reconsider. And it would be a great opportunity to opine on whether or not the board really wants to extend the rule in matter of Camarillo to cases where unfiled NTAs filed 10 years before would have the same effect as NTAs that actually initiated removal proceedings. And now the board has the Second Circuit's decision, which came out after matter of Camarillo, expressly adopting the rule in Garcia. So maybe the board might take a look at that and try to reconcile Camarillo and Cisneros and say, OK, Camarillo stands. But because of Cisneros, it has to be the notice to appear that is the basis of the current proceedings in order to stop talking. Why don't we hear from the government? But we will give you time to respond. Hey, please, the court. Nancy Canner on behalf of the Attorney General. I'd like to respond first to your Honor's question about whether or not the government violated an ethical duty. Now, I'm old and hard of hearing. So if you can slow down and articulate. Sorry. There you go. I'll respond to your Honor's question about whether or not the government violated an ethical duty. And this. Pull down the mic, but you still have to slow down and articulate. Sorry. Try again. I'm the only one from New York here. I talk very fast. I talk very fast. Whether or not the government violated an ethical duty. I don't believe in this case that it has. Cisneros did not control in this case. There was a prior NTA and a completion of removal proceedings. But Cisneros says it has to be served. Was it served? The NTA in this case was served. The first one? Yes, it was. Petitioner concedes personal service. It was served. It was never filed. It was never filed. And there was never a notice of hearing. But it was personally served. Now, does Cisneros say that it has to be filed? I don't believe it addressed that. Well, in that case, it was served, filed. Removal proceedings were commenced. So the assumption is it was filed. Because the alien had been through an entire course of removal proceedings. And then was removed, re-entered. And then there was a subsequent complete removal proceedings. They tried to apply the initial order to show cause, I believe back then, to trigger the stop time rule. We don't have that situation here. We have a NTA that was personally served upon the alien. The alien concedes that personal service took place. It was just never filed, and a notice of hearing was never issued. With respect to Garcia-Ramirez, our position today is that it doesn't control. It was a footnote. It was in dicta, and the issue was not before the court. The issue before the court was a 90 to 100 day rule for cancellation, not when the stop time rule is triggered. However, Your Honors, in this case, I do believe that the government's position on the law is correct. The stop time rule should be triggered by personal service of a notice to appear. That's the language of the statute, and the board in matter of Camarillo recently adopted a definitional approach to determining when the stop time rule is triggered. The board held that service alone is sufficient. Do you agree with your adversary that the board did not address the question of Cisneros on the motion to reopen? Absolutely. Well, did the board not address the issue of what? Cisneros. That is to say, there was a motion to reopen. Correct. At the end of the motion to reopen, Cisneros was argued. I have to say it was at the end of the motion. It was not a very long paragraph, but there it was. Your opponent says the board was required to respond to that argument, and that the board did not respond. Do you agree that the board did not respond? The board did not respond to Cisneros. The board responded to their Garcia Rivera's argument. Do you agree that the board should have responded to the Cisneros argument? I believe that it would be desirable for the board to have done so. I don't believe it's required that they do so in a motion to reopen, and I think they're stupid. Now, why not? Because the argument is you overlooked a binding case, and the BIA continues to overlook it. Well, because, Your Honor, it's an old case. It's an old case that was in existence on direct appeal. Petitioner failed to cite it. Petitioner failed to argue it. Petitioner presented it in a motion to reopen. It doesn't actually control. Well, maybe not. Arguably, it could. I mean, first of all, it's a 2004 case. I'm not sure that that's how old that is. But, I mean, it arguably could control. There are two different proceedings here. If they find out that the NTA, in order to stop the time, has to be an NTA in the particular proceeding at issue, it very well may control it. Is that not so? It could control, Your Honor. But in this case, Petitioner was served with an NTA that provided him with notice that the government believed he was removable. I believe that the stop time rule is triggered upon that action. That may be what you believe. What's the law? I believe that is the law, Your Honor. But I think there's some argument as to whether that's actually the law. Absolutely, Your Honor. The Ninth Circuit, neither the Ninth Circuit nor the board have ever addressed this issue. The government would not oppose. I've talked to my reviewers. The government would not oppose remand for the board to consider Camarillo in the first instance. What application Camarillo. Camarillo and Cisneros? Sure. And its application. And its application in this case. I think in this case, we have a very unique set of facts where the alien was served with an NTA. The NTA then sat in a desk drawer somewhere, evidently, for quite a while. And it was only the alien who brought the attention of the NTA to the government. In reading of the transcript, it does not appear the government was even aware of this 1998 NTA until the alien offered this information. You'd be perfectly satisfied with a remand, then, to examine this? I would not oppose a remand for the court, for the board, to look at Camarillo in light of what happened here. An NTA that was served, but not filed. Of course, we'll have to ask another side if this effectively lures the other side into some kind of a trap. Oh, there's no trap. But let me try to clarify that. It would not only be for an analysis by the BIA of Camarillo, but it would also be, on the motion to reconsider, it would be for the applicability of Cisneros. Yes, the board could consider whether it having an entirely completed removal proceeding applied in this case. How about the following argument? The Garcia-Ramirez argument was, indeed, made by the petitioner to the BIA. Now, the case wasn't named, but the argument was very explicitly made. The BIA says it wasn't made, which is wrong. Should we also remand to say, well, what do you do, given the fact that the argument was made to you at that time, and that the law as it existed at that time, it looked like a winning argument? Well, Your Honor, I disagree. I don't believe it is a winning argument, because that's not the court's ruling. Well, I didn't say it looked like it could be. I'll say it that way. It was a plausible argument at the time. And should they decide it as of the law at that time, or did they get to apply Cabrillo, which was decided later? I believe the court applies. Well, I believe the board addressed Garcia-Ramirez. The board said the issue was not before the court. So the board's interpretation when it issued its December 2008 denial of the motion to reconsider was that Garcia-Ramirez did not control. So it should consider the case in light of Camarillo. And this court, I've looked at this court's cases following Camarillo. This court has not decided Camarillo, or explained its statement in Garcia-Ramirez. In the cases Petitioner cites in his 28 days, it's unclear in the decisions whether or not a notice of hearing was actually issued. So the precise issue of what happens when you have a notice to appear that's served, filed, but there is no notice of hearing, and then a subsequent new notice of appearance is filed, notice to appear has been filed, has never actually been addressed by either this court or the board. Let me ask a different question. What would happen to this Petitioner under the Morton Memo? Under the Morton Memo, I believe that Petitioner could be eligible for prosecutorial discretion. We'd have to do a background check. However, I'm not sure that administrative closure, I mean, the agency could administratively close the case. Theoretically, DHS agreed to it. That doesn't help him very much in terms of his application for cancellation. However, administrative closure does close his removal proceedings. Fair number of cases in this posture, now that the Morton Memo has come out, go to mediation. Would the government object to mediation, pending any decision out of this panel? No, Your Honor. We could put the case into mediation. Petitioner, I cannot agree to remand the case. I don't have authority to do that here today. I thought you just did agree to remand. You said you would not. I can argue for remand to the board, but I can't agree to remand for administrative closure. No, I understand that. No, that would require mediation or some further. Yeah, yeah, sure, I understand that. I have another question. This is a kind of a curious fact situation in that, as you said, the NTA sat in a drawer someplace and nobody was doing anything, so it's a petitioner that brought it to people's attention. Was there any reason that required the issuance of a new NTA, rather than just operating on the basis of the old one? I don't believe there is, Your Honor. Under 242G, I believe, the Attorney General has the discretion as to how it wants to prosecute its cases. I believe, in this case, had the agency gone ahead and issued a new notice of hearing, or issued a notice of hearing under the prior removal proceedings, no, we wouldn't be here today. That's right. I actually don't believe the alien has been prejudiced because, you know, personally versus the law. I actually personally don't believe the alien's been prejudiced. In 1998, they were put on notice that they were removable and stop time should have been triggered. However, because of the other facts here, that there was a six and a half year delay, and it was because of a bureaucratic mistake, basically, that the alien was permitted to accrue the time period for continuous physical presence, I wouldn't, we would, my office would not oppose mediation to see if there's anything we can do with DHS. Okay. Any further questions, Mr. Mahone, about that? We need a good section on the other side. We go to mediation. Okay. Thank you. Why don't we put a minute on the clock and see what happens? I don't want to snatch defeat from the jaws of victory, but I just wanted to correct a misapprehension. What happened in this case isn't just that my client was detained and issued a notice to appear. He was also released on a $5,000 bond, which the government still has. And the reason in 2004 he was served a new notice to appear was because somebody found the case in a drawer, realized they had this outstanding bond, and sent him an appointment notice to come in specifically to be issued a new NTA. And so when he came in and was issued a new NTA, my feeling is the reason they gave him a new one is because they assumed that at least that way he'd have an opportunity to apply for a 10-year cancellation removal. And I also want to take issue with any statement the government made that would lead you to believe that this first NTA was ever filed with the Immigration Court. The transcript makes clear that it was not. And then my final point is that. It was served but not filed. That's the point. And my final point is that if the government can't agree to remand, if they can only agree to prosecutorial discretion, that's not going to help my client at all. He's only about a year away from a priority date coming current. So he can adjust status. But only if he has pending removal proceedings. If he has a final order. Say that again. I missed what you said. That it wouldn't be in my client's interest to seek prosecutorial discretion under the Morton memo because all that does is it closes his removal proceedings. Whereas a remand would give him the opportunity to then seek remand from the board, not just for cancellation removal, but also for adjustment of status based on a 1998 priority date he has through a fourth preference visa petition. So I'm not opposed to mediation. But if the government is representing that they cannot agree to remand, then I don't think mediation would accomplish anything. So you're asking for straight remand? Correct. Either on the motion to reconsider or on both. OK. So you don't want mediation is what I'm hearing. That's correct, Your Honor. OK. And thank you very much for the extra time. Thank you. OK. Thank both sides for your arguments. Ordaz-Gonzalez versus Holder is now submitted for decision. The next case on the argument calendar, Zopati versus Rancho Dorado Homeowners Association. Looks like both sides are here. Yeah.
judges: Stein, Trott, Fletcher